(No. 41995.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* HOBLE McCULLOUGH, Appellant.

*Opinion filed May 20, 1970.*

CHARLES W. CONNORS, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and JAMES W. REILLEY, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Hoble McCullough, pleaded guilty to the charge of robbery in the circuit court of Cook County and was sentenced to the penitentiary for a term of from six to ten years.

He brings this direct appeal (see 43 Ill.2d R. 302), attacking the constitutionality of the process by which the trial court accepted his guilty plea, and, in the alternative, urges this court to reduce his sentence "because the trial Court failed to properly weigh the facts of defendant's record which should have been used in mitigation."

Defendant was indicted on December 15, 1967, for the knife-point robbery of Harry Furtkamp, a milk delivery man. The robbery occurred in an apartment building on the west side of Chicago. Two policemen, who had been

investigating a series of truck-driver robberies, observed the victim's truck parked at the location. They saw defendant hurriedly leave the apartment building and discard a knife. They followed and apprehended him. Defendant was then brought to the victim who identified McCullough as his assailant.

Defendant was arraigned on December 26, 1967, at which time counsel was appointed to represent him, and a plea of not guilty was entered. Thereafter, on October 2, 1968, defendant appeared in court with counsel and requested leave to withdraw his previously entered plea of not guilty and to substitute a plea of guilty. Questioned by both his counsel and the court, defendant acknowledged his understanding of his right to a jury trial and that his entry of a plea of guilty would waive that right. He then executed a written jury waiver.

He was further questioned:

"THE COURT: Before accepting your plea, it is my duty to advise you that on a plea of guilty to this indictment charging you with armed robbery, I may sentence you to a term in the Illinois State Penitentiary of not less than two and for as long as the rest of your natural life; do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: And knowing and understanding that, do you still persist in your guilty plea?

THE DEFENDANT: Yes, sir."

The court then accepted the plea, entered a finding of guilty and heard evidence in aggravation and mitigation.

The State recommended a sentence of from eight to fourteen years and introduced defendant's past record: In 1954, defendant was convicted of petty larceny and sentenced to one year in the House of Correction; in 1957, he pleaded guilty to three counts of armed robbery and was sentenced to the Illinois penitentiary for a term of from

two to eight years; and, in 1964, he pleaded guilty to two counts of armed robbery and was sentenced to the penitentiary for a term of from four to eight years.

Defendant argued in mitigation that all of his previous convictions were primarily the result of his addiction to narcotic drugs, and that while in prison his conduct was "very good". He further established that immediately prior to the present offense, he had been gainfully employed, but that his parole officer had required him to undergo a series of tests to determine if he was using narcotics. The tests, which took a period of two weeks and which necessitated his absence from work, proved negative. However, because of the time off and his criminal record, defendant's employment was terminated. The defense suggested a sentence of from five to eight years. He was sentenced to a term of from six to ten years.

Defendant, relying on *Boykin* v. *Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, argues that his waiver of jury trial and his plea of guilty were not intelligently and voluntarily made. He also argues, somewhat anomalously that a "routine warning by the court that Defendant might receive a sentence of up to life imprisonment does not assure that the Defendant's entry of a plea of guilty is an intelligent one." After careful scrutiny of the plea proceedings in this case, we find that defendant voluntarily and intelligently waived his right to a jury trial and entered a plea of guilty.

In *Boykin* v. *Alabama*, the court held that it was constitutional error for a trial court to accept a plea of guilty without an affirmative showing that it was "intelligent and voluntary." (395 U.S. at 242, 23 L. Ed. 2d at 279.) However, the facts in the present case are totally unlike those in *Boykin*. There, the court noted: "So far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." (395 U.S. at 239, 23 L. Ed. 2d at 277.) In the case at bar, de-

fendant was advised and admonished as to his rights and the consequences of his plea by both his attorney and the court. And we find that the admonishment given not only conformed to that required by our statute (Ill. Rev. Stat. 1967, ch. 38, par. 113—4) and our rules (43 Ill.2d R. 401(b),) but also to section 1.4 of the American Bar Association Standards Relating to Pleas of Guilty (Tentative Draft, 1967), which provides in pertinent part: "The court should not accept a plea of guilty * * * from a defendant without first addressing the defendant personally and (a) determining that he understands the nature of the charge; (b) informing him that by his plea of guilty * * * he waives his right to trial by jury; and (c) informing him: (i) of the maximum possible sentence on the charge, including that possible from consecutive sentences; (ii) of the mandatory minimum sentence, if any, on the charge; * * *."

The record before us clearly indicates defendant's understanding and voluntary jury waiver and plea of guilty. However, defendant additionally argues that he was not properly advised as to the possible length of his sentence. Essentially, he argues that because both the State's and the defense's sentence recommendations as well as the actual sentence imposed were far short of the statutory maximum, it was misleading for the court to give the "routine warning" that he could be sentenced to a term of not less than two years and as long as his natural life. We find this argument unconvincing. At the time the court admonished defendant as to the consequences of his plea, no recommendation of sentence had been made and no evidence in aggravation or mitigation had been entered. Accordingly, the admonition by the court fully and realistically apprised defendant of the consequences of his plea.

Finally, defendant makes an impassioned plea for us to exercise our discretionary authority and reduce his sentence. (43 Ill.2d R. 615.) He presents for our consideration

those same facts which were before the trial court, and additionally, specific facts regarding his commendable attempt at rehabilitation. However, we recently restated in *People* v. *Hampton*, 44 Ill.2d 41, and *People* v. *Richardson*, 43 Ill.2d 318, that where the sentence imposed is within the statutory limitation, it will not be disturbed unless greatly at variance with the purpose and spirit of section 11 of article II of our constitution. And, that the trial court is normally in a superior position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review. In the case before us, the trial court questioned defendant in detail as to his past criminal record and his addiction to narcotics in order to best determine a sentence consistent with his rehabilitation potential. We find that the court properly weighed the facts before it sentenced defendant—there was no abuse of discretion.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*